UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br>      v.<br><br>JESSE JAMES PALATO,<br><br>                Defendant. | Case No. CR 10-1235-SVW(RCx)<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW<br><br>JS3 |

**I. INTRODUCTION**

On July 5, 2011, the Court held a bench trial in this case and heard further argument on July 6-7, 2011. Defendant Jesse Palato is charged in a single-count indictment with using a facility of interstate commerce to attempt to persuade, induce, entice, and coerce a minor to engage in criminal sexual activity, in violation of 18 U.S.C. § 2422(b). The Court, sitting as trier of fact, finds the Defendant NOT GUILTY.

\\

\\\

**II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Government bears the burden of demonstrating beyond a reasonable doubt that (1) Defendant knowingly attempted to persuade, induce, entice, or coerce a minor to engage in prostitution or illegal sexual acts; and (2) that Defendant took a substantial step toward committing the crime.  18 U.S.C. § 2422(b); Ninth Circuit Model Criminal Jury Instructions § 5.3 ("Attempt").

**(1)  Knowingly Inducing, Enticing, or Coercing Minor to Engage in Sexual Acts**

The Government correctly summarizes the law in its trial memorandum:

> There is an important distinction between an attempt to persuade, induce, entice, or coerce a minor to engage in unlawful sexual activity, which is what section 2422(b) criminalizes, and an attempt to engage in the sexual activity itself. . . . The latter is an attempt to complete the physical act of sex, for which physical proximity is necessary, while the former *is an attempt to obtain the minor's assent to engage in sex*, for which physical proximity can be probative but is not required.
>
> (Doc. No. 33 at 6) (emphasis added) (internal citations omitted).

In Goetzke, the Ninth Circuit found that a rational juror could have found that the defendant knowingly tried to persuade, induce, entice, or coerce a minor in violation of § 2422(b).  United States v. Goetzke, 494 F.3d 1231, 1237 (9th Cir. 2007).  The defendant previously had physical contact with the victim at a ranch in Montana, including massages and wrestling.  The defendant sent letters to the victim in Louisiana, telling him he was "cute," had a "nice butt," advising him how to stimulate himself, expressing a desire to see him naked and to "put your peter in my mouth," and encouraging the victim to come back

to the ranch in Montana when school was out by promising him a motorcycle and recreational activities. Id. The Ninth Circuit concluded that the jury rationally found that "the allure of the recreational activities and the prospect of a motorcycle . . . [in the letters] . . . fit neatly within the common understanding of persuade, induce, or entice." Id.

Undoubtedly, here, Defendant knew J.S. was a minor and believed he was chatting with J.S.[1] Like the letters in Goetzke, Defendant's e-mails and real-time chats graphically describe Defendant's desire to engage in sexual acts with J.S. Defendant describes how he would engage in anal sex with J.S. and asks J.S. questions about how he would engage in oral sex. (Ex. 54). Defendant states he would keep any rendezvous private and reassures J.S. that he would not make J.S. uncomfortable. (Id.).

The Government argues that Defendant promised J.S. money to engage in sex acts, which would qualify as promises designed to persuade, induce, or entice J.S. J.S. testified that in text messages he exchanged with Defendant prior to the FBI's involvement, Defendant directly offered him money for sex acts. The record does support J.S.'s statement that J.S. and Defendant exchanged some lewd text messages for about a week starting in July 22, 2010, before SA Lies assumed J.S.'s identity. However, the Court does not credit the remainder of J.S.'s testimony, including his testimony that Defendant

---

[1] In fact, on the transcripts received in evidence (except the Facebook chats), Defendant was chatting with Special Agent Lies, an undercover FBI agent posing as J.S. The Court refers to Special Agent Lies as "J.S." to avoid confusion. The Court notes that Defendant and J.S. had exchanged text messages prior to the FBI's involvement; however, those text messages are not in evidence.

3

asked J.S. to come to California without his mother, or that Defendant offered J.S. any money, or incrementally increasing amounts of money, up to $1000 for anal sex.[2] First, the text messages themselves were not presented because J.S. claimed he deleted them prior to July 30, 2010. Second, J.S. is a troubled youth with a history of anger problems and lying. On one occasion, J.S. admitted lying about whether his stepfather sexually abused him. Though the impact of this lie is lessened by further testimony that J.S.'s biological father threatened physical harm to J.S.'s mother unless J.S. lied, J.S. admitted being untruthful on another occasion. While at Compass, J.S. made an official complaint that one of the staff members threatened him. J.S. admitted on the stand that this complaint was untruthful. Third, J.S. did not reveal the nature of his contacts with Defendant to the police until he was being investigated for his involvement in a fight with local boys on July 31, 2010. J.S. had a motive to exaggerate the seriousness of the text messages to detract attention from his own conduct and avoid being punished, sent back to Compass, or sent to live with his abusive father. Finally, the tone and content of the Facebook chats and Gmail messages stands in stark contrast to the aggressive offers of money for sex in the alleged text messages. Neither the Facebook chats nor the Gmail chats ever mention a specific amount of money for sex acts. The tone of the chats is less serious and the statements therein are far more indirect than straight offers of money for sex. Moreover, Defendant repeatedly indicated in chats with J.S.

---

[2] Government's counsel, during legal argument, conceded that the Court would have to credit J.S.'s testimony about the content of text messages in order to find Defendant guilty. As discussed further *infra*, the Court does not credit J.S.'s pivotal testimony regarding the offers of money for sex and enticements to come to California.

4

that he did not have money. He also stated he had no money to travel to Tennessee in a secretly recorded interview with FBI agents. Additionally, Defendant never offered to arrange for J.S.'s transportation to California despite J.S.'s expressed desire to do so. J.S.'s testimony that Defendant offered him amounts up to and including $1000 for anal sex is inconsistent with convincing evidence that Defendant had made known to J.S. that he had little money to offer J.S. Finally, the chats give no indication that Defendant had previously expressed a desire for J.S. and his sister to come to California without their mother. The only conversations after the alleged text messages about the possibility of meeting occur in the context of Defendant coming to Tennessee. Defendant never expresses any interest in J.S.'s sister (A.S.) in these chats.

The Court finds A.S.'s testimony – that she saw a text message from Defendant on J.S.'s phone stating that she and J.S. could come to California but would have to sleep in Defendant's bed – not credible for similar reasons. A.S. has a motive to protect her brother and support his testimony. Additionally, J.S. did not testify that he received any such message from Defendant. Finally, like J.S., A.S. is a troubled youth with a history of exaggeration and mental instability.

Thus, unlike Goetzke, where the defendant clearly offered the victim a motorcycle and the prospect of fun activities if he were to return to Montana for sex acts, Defendant's statements in this case do not amount to such clear enticements.[3] First, Defendant's initial

---

[3] Moreover, the court in Goetzke emphasized that its holding was limited by the procedural posture of the case – a review of the rationality of a jury's guilty verdict. See Goetzke, 494 F.3d at 1235, 1237, 1237 n.5. The court in Goetzke did not purport to create a minimum threshold of conduct, whereby if the threshold is met in a

5

Facebook contacts do not reference sex acts. Second, in later Gmail chats, Defendant generally alludes to money in response to J.S.'s queries, but does not outright promise a specific sum of money. Nor does he directly address J.S.'s requests for a skateboard in exchange for sex acts. Instead, Defendant only asks what J.S. would do for a skateboard without ever promising one. (Ex. 44). During one Gmail chat,[4] J.S. asks Defendant what J.S. would get in exchange for anal sex. Defendant responds only "my cok."[5] (Ex. 54). Thus, construing Defendants' statements on the submitted transcripts as a whole, Defendant makes no clear promise to offer money in exchange for sex acts.

**(2) Substantial Step**

Even if the Government were able to show inducement, the Government has failed to show that Defendant took a substantial step toward carrying out the crime.

---

particular case, the trier of fact must return a guilty verdict.

[4] In these chats, the shorthand "lol" stands for "laughs out loud" and "jk" stands for "just kidding."

[5] As the chat continues, J.S. says "u said u would hook me up with some green." Defendant responds "jk." J.S. states "that is soooo wrong dude lol but funny." Defendant then states, "I will.. I was playin." (Ex. 54). The Government argues that Defendant's statement "jk" and "I was playin" refer to Defendant's assertion that J.S. would only get Defendant's "cok" (penis) for sex acts, rather than "some green." Even if the Government's interpretation were clear beyond a reasonable doubt, Defendant never offers J.S. any definite sum of money and J.S. first raises the topic of money. Moreover, throughout the chat, Defendant takes a joking tone and states he is "just kidding" or "laughs out loud." Additionally, when construed in context with Defendant's numerous statements to J.S. stating he does not have any money (Exs. 62, 63), Defendant's vague responses to J.S.'s requests for money do not suggest a firm intent to persuade, induce, or entice.

"To constitute a substantial step toward the commission of a crime, the defendant's conduct must (1) advance the criminal purpose charged, and (2) provide some verification of the existence of that purpose." Walters v. Maass, 45 F.3d 1355, 1358-59 (9th Cir.1995) (internal quotation marks omitted).  The "defendant's actions must cross the line between preparation and attempt by *unequivocally demonstrating* that the crime will take place unless interrupted by independent circumstances."  Goetzke, 494 F.3d at 1237 (quoting United States v. Nelson, 66 F.3d 1036, 1042 (9th Cir. 1995)) (internal quotation marks omitted) (emphasis added).  In Goetzke, the Ninth Circuit held that a rational trier of fact could find that a defendant has taken a substantial step under § 2422(b) when the "defendant initiates conversation with a minor, describes the sexual acts that he would like to perform on the minor, and *proposes a rendezvous to perform those acts*."  Id. (emphasis added).

        Here, unlike Goetzke, where the defendant's letters clearly proposed that the victim return to the Montana ranch after school was out for the summer like he did last year, discussions between J.S. and Defendant never lead to a solidified plan or proposal to meet.  In Defendant's initial Facebook contact with J.S. on July 22, 2010, before the nature of the conversations between Defendant and J.S. turned sexual, Defendant states "but there is nothin like los angeles....maybe I can sponsor u sometime....lol..."  (Ex. 63).  However, immediately, Defendant clarifies that his statement "was a joke......if I had extra money I wold sponsor u to come and visit....thats what I was jokin about."  (Ex. 63).  These joking and contingent statements do not amount to a clear plan or proposal to meet.

On August 20, 2010, Defendant states in an e-mail message to J.S., "u still goin to show me around *if* I go there...." (Ex. 43) (emphasis added). On August 25, 2010, J.S. responds "yeah totally dude .. If ur 4 real...what u wanna do when u get here and when u comin???" (Id.) Defendant never responds to J.S.'s question, again leaving the topic of a meeting hanging and dependant on contingencies.

On August 26, 2010, in response to further inquiries from J.S. about whether Defendant was "4 real comin out here," Defendant responds "4 u..yea." (Ex. 44). However, Defendant never specifies a time or a location.

On September 2, 2010, Defendant states to J.S., "I need 2 know if there is ne hotels in ur area." (Ex. 54). J.S. responds, "I dunno can u check on the net??" (Id.). Defendant then changes the subject and never returns to the topic. J.S. later states "when is this all gonna happen in a year??? hahaha." Defendant responds, "not that far.. I have 2 time off work.. Mayb a few mos." (Id.). Again, Defendant's responses are indefinite and raise contingencies.

On September 23, 2010, in the context of statements about Defendant's job not paying well and his inability to buy a new television, J.S. states "r u still in california cuz im ready to get outta here!!!" (Ex. 62). Defendant responds, "u still wanna hook us.." J.S. states, "4 real or u jus yankin me??" Defendant responds, "4 right now I am still here.." J.S. states, "where???" Defendant responds "wen I go there.. About 2 mos..." Defendant then changes the subject. Defendant's responses remain vague and indefinite despite J.S.'s efforts (Agent Lies' efforts) to repeatedly bring up the topic of meeting.

On September 24, 2010, FBI agents interviewed Defendant at his place of work. Defendant had no knowledge that the interview was being recorded. A recording of the interview was admitted into evidence. During the interview, Defendant admitted to having graphic conversations with J.S. Defendant stated he had a knowledge of the law from his prior training and work experience at troubled youth facilities like Compass. Defendant admitted he knew he could be incarcerated and also jeopardize his career if he ever attempted to persuade a minor to engage in sexual acts. However, Defendant stated he had no intention of ever meeting J.S. and never tried to do so. Defendant also stated he had no money to travel. The Court credits these statements. No evidence was presented that Defendant attempted to take time off work, made travel plans, or was untruthful regarding his limited financial resources.

Thus, even though Defendant may have fantasized about performing illegal acts with J.S., the Government has not shown beyond a reasonable doubt that Defendant's actions *unequivocally demonstrate* that the crime would take place absent independent circumstances. Here, Defendant's statements about meeting were anything but unequivocal -- throughout the conversations, Defendant made only vague and contingent references regarding whether he would ever meet with J.S. Even if some of Defendant's statements, when viewed in isolation, can be construed as evidence of a substantial step, the evidence should be viewed as a whole. Reviewing Defendant's statements in context, the Court is not firmly convinced that the evidence supports the conclusion

that Defendant took a substantial step toward persuading, inducing, or enticing J.S beyond a reasonable doubt.[6]

**III. CONCLUSION**

The Court, sitting as trier of fact, finds Defendant Palato NOT GUILTY of the single-count indictment. The Court orders the defendant released forthwith.

IT IS SO ORDERED.

DATED: July 14, 2011

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

---

[6] See Ninth Circuit Model Criminal Jury Instructions § 3.5 ("Reasonable Doubt-Defined").